**GEORGE W. KANE, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 555–89C.

United States Claims Court.

Aug. 12, 1992.

Francis M. Mack, Columbia, S.C., attorney of record, for plaintiff.

Odessa P. Jackson, Commercial Litigation Branch, Civ. Div., Dept. of Justice, Washington, D.C., with whom were David M. Cohen and Asst. Atty. Gen. Stuart Gerson, attorneys of record, for defendant.

## OPINION

HORN, Judge.

### BACKGROUND

This case is before the court on the defendant's Motion to Dismiss, pursuant to Rule 12(b)(1) of the Rules of the United States Claims Court (RUSCC), for lack of subject matter jurisdiction, and RUSCC 12(b)(4), for failure to state a claim upon which relief can be granted. Plaintiff, George W. Kane, Inc. (Kane), seeks judgment against defendant, the United States, to recover $154,061.67, "as a result of the omission of the proper home office overhead," on a construction contract Kane completed pursuant to a takeover agreement. Defendant asserts that Kane lacks privity with the defendant and, therefore, is not the real party in interest in the suit. Thus, defendant maintains that the complaint should be dismissed for lack of subject matter jurisdiction because plaintiff, Kane, fails to meet the requirements of RUSCC 17(a),[1] 41 U.S.C. § 601(4) (1988),[2] and 28 U.S.C. § 1491 (1988).[3] In addition, defendant contends that Kane fails to

---

1. RUSCC 17(a) states, in pertinent part: "[e]very action shall be prosecuted in the name of the real party in interest."

2. Because Kane was neither a party to the original contract between Davis and the government, nor did it execute a takeover agreement, defendant alleges Kane is not a "contractor" as defined by the Contract Disputes Act, 41 U.S.C. §§ 601–613.

3. The Tucker Act, 28 U.S.C. § 1491, states: "[t]he United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States...."

state, anywhere in its complaint, the grounds upon which subject matter jurisdiction is based, as required by RUSCC 8(a), and, therefore, fails to state a claim upon which relief can be granted under RUSCC 12(b)(4). After careful consideration of the briefs filed by both parties, and for the reasons discussed below, defendant's Motion to Dismiss is GRANTED.

## FACTS

On July 18, 1986, the United States, acting through the United States Army Corps of Engineers (Corps), accepted a $2,650,000 bid from the F.E. Davis Company (Davis) for the construction of an anti-armor range at Fort Bragg, North Carolina. The resulting contract (Contract No. DACA21–86–C–0036), a small and disadvantaged business 8(a) set-aside contract, was certified by the government as fair and reasonable to both parties. The Hartford Accident & Indemnity Company (Hartford), a Connecticut corporation, with its principal place of business in Hartford, Connecticut, and Davis executed a performance bond in the amount of $2,650,000. Davis abandoned its obligations under Contract DACA21–86–0036 by a letter, dated June 3, 1987, to the Corps. The government then demanded that Hartford complete the project according to the performance bond on the project.[4] Hartford, pursuant to its obligations, took over and completed the project by obtaining a completion contractor, plaintiff George W. Kane, Inc., to complete all remaining obligations under the contract. The appointment of Kane was documented in the Surety Takeover Agreement, dated August 26, 1987. The Surety Takeover Agreement was executed by Hartford and the Corps, and signed by representatives of Davis, Hartford, the Corps and the United States Small Business Administration, but not by the plaintiff, Kane.

Plaintiff completed the project, and subsequently presented a claim to the contract-

ing officer for $154,061.67, alleging omission of proper home office overhead in the original contract between Davis and the government. The contracting officer issued a decision denying the plaintiff's claim, and plaintiff, Kane, filed this suit in the United States Claims Court, seeking damages in the amount of $154,061.67.

## DISCUSSION

A motion to dismiss, based on a challenge to the jurisdiction of the court, requires that the court reach its decision based on the evidence presented by the parties. The Supreme Court has clearly articulated, and the United States Court of Appeals for the Federal Circuit has explicitly adopted, the general standard for weighing evidence presented in a complaint when deciding a motion to dismiss as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989). If a motion to dismiss for lack of subject matter jurisdiction challenges the truth of the jurisdictional facts alleged in the complaint, the trial court may also consider relevant evidence in order to resolve disputed facts. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court must accept as true any undisputed allegations of fact made by plaintiff. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. When facts relevant to the issue of jurisdiction are disputed, the court is required to decide those facts. *Reynolds*, 846 F.2d at 747. The burden is on the plaintiff to establish jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Metzger, Shadvac & Schwartz v. United*

---

**4.** The Miller Act requires prime contractors on federal construction projects exceeding $25,000 to post both payment and performance bonds. *See* 40 U.S.C. § 270a (1988). In issuing a performance bond, a surety guarantees perform-

ance of the contract and completion of the project if the bonded contractor defaults. *See Aetna Casualty & Surety Co. v. United States*, 845 F.2d 971, 973–74 (Fed.Cir.1988).

*States,* 10 Cl.Ct. 107, 109 (1986). In the case at bar, plaintiff has failed to meet this burden.

Plaintiff contends that defendant's Motion to Dismiss is untimely, and, therefore, should be dismissed. The complaint was filed and defendant answered within the required 60 days, but did not file its Motion to Dismiss until more than a year after it filed its answer. While certain motions are waived if not brought on a timely basis, RUSCC 12(h)(3) provides that, "[w]henever . it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Thus, a motion to dismiss for lack of subject matter jurisdiction may be raised at any time and must be considered by the court. Moreover, even if the parties remain silent, a trial court is obliged to notice, *sua sponte,* its want of jurisdiction. *Hambsch v. United States,* 857 F.2d 763, 765 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1054, 109 S.Ct. 1969, 104 L.Ed.2d 437 (1989). Furthermore, in accordance with RUSCC 12(h)(2), a motion to dismiss for failure to state a claim upon which relief can be granted may be raised at any juncture in the proceedings, up to and including trial. Accordingly, defendant's Motion to Dismiss, either for lack of jurisdiction or for failure to state a claim, is timely.

Defendant maintains that this court lacks subject matter jurisdiction to hear plaintiff's claim. Congress has defined the jurisdiction of the Claims Court under the Tucker Act, 28 U.S.C. § 1491 (1988), to include those claims "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Act itself does not create a substantive right of recovery against the United States. As stated by the Supreme Court: "The Tucker Act, of course, is itself only a juris-

dictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). "A claimant must look beyond the Tucker Act to discover and plead a money mandating predicate upon which to complete jurisdiction." *Westech Corp. v. United States,* 20 Cl.Ct. 745, 748 (1990) (citations omitted). In other words:

> [T]he prospective claimant must invoke substantive rights grounded expressly or by implication in a contract, an act of Congress or a regulation of an executive department. *See United States v. Mitchell,* 463 U.S. 206, 217 & n. 16, 103 S.Ct. 2961, 2968 & n. 16, 77 L.Ed.2d 580 (1983); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605, 607, 372 F.2d 1002, 1007, 1009 (1967).

*United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

Plaintiff tries to cite to the doctrine of equitable subrogation,[5] and to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1988), to establish independently existing rights over which this court may exercise jurisdiction. The government, however, argues that this court does not have jurisdiction over plaintiff's action because there was no privity of contract between plaintiff and the government with respect to Contract No. DACA21–86–C–0036. Contrary to plaintiff's assertions, and as pointed out by defendant, the plaintiff is not a subrogee to all of the rights and responsibilities of the original contractor, Davis. The fact that Hartford, the surety, requested the plaintiff to complete the contract work based upon the General Indemnity Agreement between Hartford, Davis and the plaintiff, does not confer standing upon plaintiff to bring suit against the United States.

---

5. The doctrine of equitable subrogation recognizes that a "surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 136–37, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962).

The doctrine of equitable subrogation and the law of suretyship [6] permit limited regard for the surety's interest during the performance of the contract. The court in *Universal Surety Company v. United States*, concluded that: "the courts have clearly given the surety standing to directly sue the government/owner.... [The government] is clearly the primary beneficiary of the surety's obligation and it would be inequitable to allow it to retain monies which it has previously agreed to pay for work done." *Universal Sur. Co. v. United States*, 10 Cl.Ct. 794, 799 (1986). The United States Court of Appeals for the Federal Circuit, however, appears to have narrowed a surety's entitlement somewhat by indicating that the government may be contractually bound to a surety, if the government has manifested an intent to be so bound. *Ransom v. United States*, 900 F.2d 242, 244–45 (Fed.Cir.1990); *see also Employers Insurance of Wausau v. United States*, 23 Cl.Ct. 579, 580–82 (1991).

Generally, recovery is limited to traditional equitable relief, i.e., for losses incurred by the surety on its bonds to the extent of the contract balance retained by the government. *Universal Sur. Co. v. United States*, 10 Cl.Ct. at 800; *see also Pearlman v. Reliance Ins. Co.*, 371 U.S. at 138, 83 S.Ct. at 235. However, when, as in the instant case, the surety and the government execute a takeover agreement following default by the contractor, a completing surety also may claim payment for extra work beyond that contemplated in the original contract price. *See Carchia v. United States*, 202 Ct.Cl. 723, 734–35, 485 F.2d 622, 628 (1973); *Universal Sur. Co. v. United States*, 10 Cl.Ct. at 799. In short, the surety may be subrogated to the rights of the original contractor, and equitable subrogation may entitle the surety to suc- ceed to the contractual rights of the original contractor against the government. *See, e.g., United States Fidelity & Guar. Co. v. United States*, 201 Cl.Ct. 1, 475 F.2d 1377 at 1382 (1973); *Balboa*, 775 F.2d at 1161; *see also Prairie State Nat. Bank of Chicago v. U.S.*, 164 U.S. 227, 231, 17 S.Ct. 142, 144, 41 L.Ed. 412 (1896).

The plaintiff, Kane, however, has not been able to point to any decisions in which a completion contractor in plaintiff's position [7] was permitted to step into the shoes of the defaulting contractor to enforce the original contractor's rights directly against the United States. Rather, the plaintiff erroneously cites to *Balboa Insurance Company v. United States*, 775 F.2d 1158 (Fed.Cir.1985), in support of its contention that, as indemnitor on the performance bond at issue, Kane stepped into the shoes of the defaulting original contractor (Davis) and became fully subrogated to the rights and responsibilities of Davis, thereby, becoming the real party in interest in the case at bar. *Balboa* supports the proposition that a surety, not a completion contractor, may assert the doctrine of equitable subrogation, because:

> In contrast to a subcontractor, which has no obligations running directly to of from the Government, *United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234, 241, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1947) (and therefore possesses no enforceable rights against the United States) a surety, as a bondholder, is as much a party to the Government contract as the contractor.

*Balboa Insurance Company v. United States*, 775 F.2d at 1160. It does not support awarding contractual rights to a completion contractor in plaintiff's far more attenuated situation.

---

**6.** "A suretyship is the result of a three-party agreement, whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third-party obligee." *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1160 (Fed. Cir.1985) (citing *United States v. United States Fidelity & Guar. Co.*, 236 U.S. 512, 35 S.Ct. 298, 59 L.Ed. 696 (1915)). Both the obligor-principal (the prime contractor) and the surety are liable to the obligee (here the government) and no suretyship exists in the absence of any of the three parties. *Balboa*, 775 F.2d at 1160. The surety, as bondholder, "is as much a party to the Government contract as the contractor." *Id.* at 1160.

**7.** Plaintiff, although it completed the construction contract at the demand of the surety, was neither a party to the original contract nor a signatory to the Surety Takeover Agreement.

In the instant case, while the plaintiff signed the General Indemnity Agreement, as did representatives of Hartford and Davis, the government did not. Moreover, although the plaintiff was named as the completion contractor in the Surety Takeover Agreement, the Surety Takeover Agreement was signed only by Davis, Hartford and the government, not by the plaintiff, Kane. The government did not sign any document with Kane. In addition, there is no language in the Surety Takeover Agreement which even purports that the government has agreed to be obligated to Kane. In fact, Paragraph 5 of the Surety Takeover Agreement on Contract No. DACA21–86–C–0036 clearly states that:

> it is expressly understood and agreed that CORPS shall not be bound to any completion contractor or subcontractor by the terms of this Agreement and shall only be bound to SURETY and shall look to SURETY for compliance with the terms of this agreement.

■■■ Privity of contract is "an indispensable prerequisite to the maintenance of a suit in this court against the government under the Tucker Act." *Thomas Funding Corp. v. United States*, 15 Cl.Ct. 495, 499 (1988). "The government consents to be sued only by those with whom it has privity of contract, which it does not have with subcontractors." *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir.1984). Congressional consent to suit in the Claims Court, which waives the government's traditional immunity, must be explicit and strictly construed. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *see also Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1383 (Fed.Cir.1983). A waiver of sovereign immunity cannot be implied, but must be unequivocally expressed. *United States v. Testan*, 424 U.S. at 399, 96 S.Ct. at 953; *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). As neither a party to the original contract,[8]

nor a signatory to the Surety Takeover Agreement, Kane is not in privity of contract with the United States in the case at bar.

The Rules of this court mandate that "[e]very action shall be prosecuted in the name of the real party in interest." RUSCC 17(a). The "real party in interest" is defined within the context of Rule 17(a) as "the party that possesses the substantive right under which the suit is brought." *Wall Indus., Inc. v. United States*, 15 Cl. Ct. 796, 803 (1988), *aff'd*, 883 F.2d 1027 (Fed.Cir.1989). Under RUSCC 17(a), a complaint may be dismissed for failure to cure a defect of not prosecuting a case in the name of the real party in interest, following passage of a reasonable time after the motion to dismiss was filed. In plaintiff's case, sufficient time to cure has clearly passed. In the instant case, were any party to have a claim against the United States, it is not the plaintiff, George W. Kane, Inc. Kane was not the surety under the original contract, nor does plaintiff allege that there was an express or implied takeover agreement to which it was a party, to entitle it to bring an action against the United States. Plaintiff clearly lacks privity with the United States, and is not the real party in interest in this lawsuit.

Plaintiff further alleges that it is entitled to proceed under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1982), because it was named as completion contractor in the Surety Takeover Agreement and completed the project pursuant to the General Indemnity Agreement with Hartford. Moreover, plaintiff contends that the contracting officer made a factual determination entitling plaintiff to proceed under the CDA; and, thus, defendant should be estopped from raising the issue at this time. The plaintiff argues: "The defendant conceded that jurisdiction existed under the Contract Disputes Act as evidenced by the Contracting Officer's decision issued to plaintiff (and not to Davis)."

---

**8.** The original contractor, F.E. Davis Company, is the only entity named in Contract No. DACA21–86–0036.

Contrary to the plaintiff's assertion, however, in the case at bar, this court lacks subject matter jurisdiction pursuant to the Contract Disputes Act of 1978. The legislative history of the CDA demonstrates that it was designed to afford a comprehensive adjudication system for government contract claims, S.Rep. No. 1118, 95th Cong., 2d Sess. 16, *reprinted in* 1978 U.S.C.C.A.N. 5235, as well as to promote negotiations, suppress frivolous claims and guarantee smooth administration of claims. *Id.* at 5250–51. Therefore, the scope of the CDA is, by design, narrow. Only a "contractor" may bring an action under the CDA. As defined by the CDA, the term "contractor" means "a party to a Government contract other than the Government." 41 U.S.C. § 601(4). Plaintiff is not a party to the government contract at issue, nor is plaintiff a party to the Surety Takeover Agreement. In short, this plaintiff can state no basis upon which to make its lawsuit fit within the jurisdiction of this court.

■ Regarding plaintiff's waiver argument, this court has clearly held that a contracting officer's final decision on a claim which evidences a jurisdictional defect is of no consequence with respect to its subsequent validity. The contracting officer has no authority to waive a jurisdictional requirement which Congress has imposed. *See Donald M. Drake Co. v. United States,* 12 Cl.Ct. 518, 520 (1987); *United Constr. Co. v. United States,* 7 Cl.Ct. 47, 51 (1984); *Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 673 F.2d 352 (1982). Kane is not entitled to sue under the Contract Disputes Act, and the contracting officer's decision cannot operate to create proper jurisdiction in a situation in which, otherwise, no jurisdiction exists.

■ Nor, can plaintiff maintain that, in the alternative, it is a valid assignee of the surety under the Assignment of Claims Act, 41 U.S.C. § 15, which states:

No [public] contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as

the United States is concerned.... [The above] provisions shall not apply in any case in which the monies due or to become due from the United States or from any department or agency thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company or other financial institution, including any Federal lending agency.

41 U.S.C. § 15 (1988). George W. Kane, Inc., does not allege it is a bank, a trust company or "other financial institution." As stated in *Westech Corp. v. United States:*

Moreover, to expand equitable subrogation to allow a surety to assert a contractor's claims would, in effect, be allowing an assignment of a claim against the government in violation of the Assignment of Claims Act, 31 U.S.C. § 3727, 41 U.S.C. § 15 (1988). *See, e.g., Produce Factors Corp. v. United States,* 467 F.2d 1343, 1348, 199 Ct.Cl. 572 (1972); *Thomas Funding Corp. v. United States,* 15 Cl.Ct. 495, 502 (1988).

*Westech Corp. v. United States,* 20 Cl.Ct. at 750. In the case at bar, plaintiff does not even have the status of a surety, and, thus, cannot claim standing under the Assignment of Claims Act.

It appears that the defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted is in large part based on defects in the complaint, under RUSCC 8(a)(1). The Rule is unambiguous in its requirement that a pleading which sets forth a claim for relief "shall contain a short and plain statement of the grounds upon which jurisdiction depends...." Although the plaintiff contends that the facts set forth in the complaint are "sufficient to inform the court and the defendant of the jurisdictional grounds," and that RUSCC 8(f) requires that "[a]ll pleadings shall be so construed as to do substantial justice," a reading of the complaint evidences no jurisdictional statement in the document. Consequently, the plaintiff's complaint fails to meet the requirements of RUSCC 8(a)(1).

## CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss is, hereby, GRANTED.

IT IS SO ORDERED.