Mohamed M. EL–SHEIKH

v.

The UNITED STATES.

No. 96–788C.

United States Court of Federal Claims.

Sept. 22, 1997.

Nils G. Peterson, Arlington, VA, attorney of record for plaintiff.

Hillary A. Stern, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## OPINION

YOCK, Judge.

This case comes before the Court on the defendant's Motion to Dismiss, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), for lack of subject matter jurisdiction. According to the Complaint, the plaintiff seeks overtime pay, pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 207, 216 (1994), that resulted from his employment at the Bolling Air Force Base Officers' Club (Bolling Officers' Club), located in Washington, D.C.

After a careful and complete examination of the pleadings, briefs, and other submissions of the parties, this Court grants the defendant's Motion to Dismiss.

### Factual Background

The plaintiff, Mohamed M. El–Sheikh, was a full-time employee at the Bolling Officers' Club, located in Washington, D.C., from September 1989 through December 1995. The plaintiff initially was employed as a party cook from September 1989 until 1992. In 1992, the plaintiff was promoted to banquet foreman, and, in late 1992, he became the assistant chef. According to the plaintiff, from approximately June 1993 until December 1995, he worked in excess of forty hours per week, which amounted to approximately 2,106 hours of overtime. However, the plaintiff did not receive any compensation for the estimated 2,106 hours of overtime.

The plaintiff's action was originally filed in the United States District Court for the District of Columbia (the district court) on July 1, 1996. On September 3, 1996, the defendant filed a Motion to Dismiss or Transfer and contended that this Court had exclusive jurisdiction over the action because the plaintiff's claim exceeded $10,000. *See* 28 U.S.C. § 1346(a)(2) (1994). In the alternative, the defendant contended that the plaintiff could keep his action in the district court if he chose to waive damages in excess of $10,000 as limited by 28 U.S.C. § 1346(a)(2). By Order dated October 24, 1996, the district court transferred the case to this Court.

On January 8, 1997, the plaintiff filed the current Complaint in this Court. According to the plaintiff:

> Defendant knew of its duty and obligation to pay overtime wages for the hours worked in excess of 40 hours per work week, and Defendant knowingly failed and refused to follow its lawful requirements. Defendant's acts and omission constitute wilful [sic] violations which entitle Plaintiff to liquidated damages for knowing violations. * * * As a result of the foregoing wilful [sic] unlawful conduct on the part of Defendant, Plaintiff has suffered damages in the amount of approximately $40,000.00.

(Compl. at 2, 3.)

### Discussion

In its Motion to Dismiss, the defendant contends that this Court lacks subject matter jurisdiction over the plaintiff's Complaint because his employer, the Bolling Officers' Club, is a nonappropriated fund instrumentality (NAFI). In addition, the defendant contends that this Court does not have jurisdiction over this action because the plaintiff was employed by the Bolling Officers' Club pursuant to an appointment rather than an employment contract. Therefore, according

to the defendant, this Court has no jurisdiction to entertain the plaintiff's claim under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994).

In his Opposition to the Defendant's Motion to Dismiss, the plaintiff contends that this Court is the only court that has jurisdiction over this action in light of the fact that the plaintiff's claim exceeds $10,000. *See* 28 U.S.C. § 1346(a)(2). In addition, the plaintiff contends that the fact that the Bolling Officers' Club is a NAFI does not preclude this Court from having jurisdiction over this action because the Bolling Officers' Club receives nonappropriated *and* appropriated federal funds. Finally, the plaintiff contends that Congress intended that employees of officers' clubs receive protection under the FLSA.

In its Response to Plaintiff's Opposition to Defendant's Motion to Dismiss, the defendant argues that the plaintiffs assertion that this Court can exercise jurisdiction over the plaintiff's action because the Bolling Officers' Club receives both nonappropriated and appropriated funds is without merit. According to the defendant:

> [T]he Bolling Officers Club is a Category C activity that is prohibited by Department of Defense (DOD) and Air Force regulations from utilizing appropriated funds to pay salary or back pay to nonappropriated fund employees such as Mr. El–Sheikh. Accordingly, any monies recovered by Mr. El–Sheikh on his claim must be satisfied from non-appropriated funds, a requirement that divests this Court of jurisdiction to entertain his claim.

(Def.'s Resp. to Plt.'s Opp. to Def.'s Mot. to Dismiss (Def.'s Resp.) at 1–2.)

▇▇▇ This Court's subject matter jurisdiction is strictly construed. *United States v. John C. Grimberg, Inc.*, 702 F.2d 1362, 1372–74 (Fed.Cir.1983); *Mega Constr. Co. v. United States*, 29 Fed.Cl. 396, 472 (1993). When the defendant puts this Court's subject matter jurisdiction into question via a motion to dismiss pursuant to RCFC 12(b)(1), the burden is on the plaintiff to establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988);

*George W. Kane, Inc. v. United States*, 26 Cl.Ct. 655, 657 (1992); *American Pac. Roofing Co. v. United States*, 21 Cl.Ct. 265, 267 (1990). In deciding a motion to dismiss, this Court must accept all unchallenged factual allegations and draw all reasonable inferences in favor of the plaintiff. *Darden v. United States*, 18 Cl.Ct. 855, 856 (1989). "If, however, a * * * [RCFC] 12(b)(1) motion to dismiss for lack of subject matter jurisdiction challenges the truth of jurisdictional facts alleged in the complaint, we may, of course, consider relevant evidence in order to resolve the factual dispute." *Id.*

According to the Tucker Act:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon *any claim against the United States* founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. *For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges. Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.*

28 U.S.C. § 1491(a)(1) (emphasis added). This Court finds that the plaintiff's Complaint does not fall within this Court's Tucker Act jurisdiction for two reasons. First, the NAFI involved in this case, the Bolling Officers' Club, is not a NAFI specifically listed in section 1491(a)(1) over which this Court has jurisdiction. Second, even if the NAFI in this case was listed in section 1491(a)(1), actions against those enumerated NAFIs can only be based on an express or implied contract, and not arising under the United States Constitution, a federal statute, or federal regulation. In this case, the plaintiff alleges a violation of a statute, the FLSA, and not a breach of a contract.

A. Lack of Jurisdiction Over NAFI.

▇▇▇ According to this Court:

**4**

The nonappropriated funds[3] doctrine is derived from the statutory prohibition of 28 U.S.C. § 2517, which provides that "every final judgment rendered by the United States Claims Court against the United States shall be paid out of any general appropriation therefor [sic]." 28 U.S.C.A. § 2517(a) (Supp.1992). Thus, the doctrine limits the jurisdiction of the court by requiring that all judgments be paid from Congressionally-appropriated monies. *United States v. General Elec. Corp.,* 727 F.2d 1567, 1570 (Fed.Cir.1984). The nonappropriated funds doctrine serves to deny access to parties who have a claim based on nonappropriated funds in order to avoid imposing an unauthorized burden on the public treasury. *Hughes Aircraft Co. v. United States,* 534 F.2d 889, 912, 209 Ct.Cl. 446 (1976).

Courts have narrowly construed this exclusion, however, and apply it to deny jurisdiction when "by law, appropriated funds not only are not used to fund the agency, but could not be." *General Elec.,* 727 F.2d at 1570.

---

3. Nonappropriated funds ("NAF") are monies which have not been deposited into the United States Treasury and which are maintained independently of the public fisc.

*Aaron v. United States,* 27 Fed. Cl. 295, 297 (1992); *see also Kyer v. United States,* 177 Ct.Cl. 747, 751 & n. 15, 369 F.2d 714 (1966); *Ford, Powell & Carson, Inc. v. United States,* 4 Cl.Ct. 200, 202–03 (1983) (finding that section 2517 is not merely a procedural matter but is a limitation on this Court's jurisdiction under the Tucker Act). Therefore, it is not enough that the plaintiff can satisfy the jurisdictional requirements of 28 U.S.C. § 1491, because "[s]ection 1491 must be read in conjunction with section 2517." *Ford, Powell & Carson, Inc.,* 4 Cl.Ct. at 203.

■ However, in 1970, Congress amended the Tucker Act and granted this Court jurisdiction over claims for money against certain NAFIs, *i.e.,* "the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration * * *." 28 U.S.C. § 1491(a)(1); *see United States v. Hopkins,* 427 U.S. 123, 125–26, 96 S.Ct. 2508, 2510–11, 49 L.Ed.2d 361 (1976). Therefore, for the purpose of this Court's jurisdiction over any claim against the United States, these listed NAFIs are to be considered the "United States." *See St. Johns Oil Co. v. United States,* 12 Cl.Ct. 139, 141 (1987).

■ Unfortunately for the plaintiff in this case, the Bolling Officers' Club is a NAFI, but not part of the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration. *See Manning v. United States,* 200 Ct.Cl. 756, 756 (1973). As this Court's predecessor previously found, "[a]part from contracts with the exchange services' specified in the 1970 amendment to the Tucker Act, Pub.L. No. 91–350, 84 Stat. 449, this court is without jurisdiction to adjudicate claims based upon contracts with NAFI's." *Howard v. United States,* 225 Ct.Cl. 659, 660 (1980); *see also Adanes v. United States,* 221 Ct.Cl. 959, 960 (1979); *Wolverine Supply, Inc. v. United States,* 17 Cl.Ct. 190, 195 (1989). Because this Court cannot compel the Secretary of the Air Force in this case to pay out money that may be due the plaintiff, this Court does not have jurisdiction over the plaintiff's claim against the Bolling Officers' Club.

Moreover, this Court lacks jurisdiction over the plaintiff's action against the Bolling Officers' Club because there is no evidence that the monies available for the payment of employees' salaries would be available from any appropriated funds. The present case is similar to this Court's prior decision in *Wolverine Supply, Inc.,* in which this Court found:

The NAFI activity at issue is the Eielson AFB CBF. This activity, unlike the agencies in the *L'Enfant Plaza [v. United States,* 229 Ct.Cl. 278, 668 F.2d 1211 (1982)], *Breitbeck [v. United States,* 205 Ct.Cl. 208, 500 F.2d 556 (1974)],* and *Ford, Powell & Carson* cases was not established by statute. The CBF was established by regulation. It was funded from sources other than congressional appropriations, and its funds were separate and apart

from funds of the Treasury of the United States. Further, the contract, upon which the claims presented rest, specifically provided that nonappropriated monies funded the contract. There are no indications or manifestations in the regulations establishing the Eielson AFB CBF or in the contract Eielson AFB CBF entered into with plaintiff that suggest or infer that appropriated funds would be available if needed. Since the regulations and the contract specifically limited expenditures to nonappropriated funds, the claims herein are beyond the jurisdiction of this court.

*Id.* at 195.

As in *Wolverine Supply, Inc.,* the NAFI involved in this case, the Bolling Officers' Club, was created by regulation not by statute. (*See* App. to Def.'s Resp. to Plt.'s Opp. to Def.'s Mot. to Dismiss (Decl. of Bernard Marcak) at 2.) Therefore, the Bolling Officers' Club's funds are "separate and apart from funds of the Treasury of the United States." *See Wolverine Supply, Inc.,* 17 Cl. Ct. at 195. In addition, the plaintiff has not presented, and this Court cannot find, any evidence in the applicable regulations that would suggest that appropriated funds are available to pay salaries or backpay, including overtime pay, to the plaintiff. To the contrary, United States Department of Defense regulations specifically state that for Category C activities, which includes the Bolling Officers' Club, appropriated fund support is not authorized for civilian personnel for "[m]anagerial and supervisory functions," "[p]ersonnel directly and primarily involved in resale," and "[a]ll other functions." (App. to Def.'s Resp. to Plt.'s Opp. to Def.'s Mot. to Dismiss (DoD Instr. 1015.10) at 4 [1]; *see also* App. to Def.'s Resp. to Plt.'s Opp. to Def.'s Mot. to Dismiss (AF Instr. 65–106) at 6.)

In his Opposition to Defendant's Motion to Dismiss, the plaintiff contends that this Court is the only court that has jurisdiction over the plaintiff's Complaint because this Court has exclusive jurisdiction over claims against the United States exceeding $10,000, and the plaintiff is seeking $40,000 in damages. According to the plaintiff, the United States district courts only have jurisdiction if the claim for damages does not exceed $10,000.

■ This Court does have jurisdiction over claims against the United States that exceed $10,000. *See* 28 U.S.C. § 1346(a)(2); *Graham v. Henegar,* 640 F.2d 732, 734–35 (5th Cir.1981). Section 1346(a)(2) states:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> \*     \*     \*     \*     \*     \*
>
> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, \* \* \* For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

However, in this case, this Court's exclusive jurisdiction over claims against the United States that exceed $10,000 does not apply because the plaintiff's Complaint does not state a claim against the "United States." According to section 1491(a)(1), only those NAFIs that are specifically listed in the Tucker Act are considered to be the "United States" for the purpose of this Court's jurisdiction over "any claim against the United States." As this Court determined, the defendant in this action, the Bolling Officers' Club, is not a NAFI specifically listed in section 1491(a)(1). Moreover, this Court found that there is no statutory or regulatory provision that provides for the Bolling Offi-

---

1. The only categories of civilian personnel for which appropriated fund support is authorized for salaries and backpay are "Executive Control & Essential Command Supervision (ECECS) at Headquarters, Major Command & Installation levels" and "Base Realignment and Closure (BRAC) related costs for NAF and APF employees." *Id.* The plaintiff clearly was never employed in a position at the Bolling Officers' Club that fits within either of these two categories.

cers' Club to receive appropriated funds for the purpose of paying salaries or back pay. Therefore, this action is not a "claim against the United States" within this Court's jurisdiction under the Tucker Act. However, this action may possibly be maintained against the Bolling Officers' Club in the proper United States district court. *See* 28 U.S.C. § 1346(a)(2); 29 U.S.C. § 216(b) (1994); *Rivera v. Installation Club Sys.*, 623 F.Supp. 269 (D.C.P.R.1985).

The plaintiff further contends that "there is no suggestion that federal funds cannot be used to fund Bolling Officers Club," and "[s]ince the officers clubs receive appropriated funds, the nonappropriated funds doctrine is inapplicable in this case, * * *." (Plt.'s Opp. to Def.'s Mot. to Dismiss at 4, 5.) According to the plaintiff, the Armed Services Military Club and Package Store Regulations support the plaintiff's argument that the Bolling Officers' Club receives both appropriated and nonappropriated funds. According to those regulations:

> *Support of Clubs.* Appropriated and nonappropriated fund support of clubs shall be provided in accordance with the policies contained in DoD Directive 1330.2 (reference (i)). Appropriated fund personnel shall be assigned to club operations in accordance with the policies contained in DoD Directive 1315.10 (reference (j)).

(Att. 5 to Plt.'s Opp. to Def.'s Mot. to Dismiss at 3–2.)

■ While this Court agrees that military officers' clubs receive appropriated and nonappropriated funds, the defendant argues that, by law, appropriated funds cannot be used for the payment of salaries and backpay. This Court agrees with the defendant that military officers clubs, including the Bolling Officers' Club, are *legally precluded* from using appropriated funds for the payment of salaries and backpay, including the

overtime pay sought by the plaintiff. (See App. to Def.'s Resp. to Plt.'s Opp. to Def.'s Mot. to Dismiss at 4 (DoD Instr. 1015.10); App. to Def.'s Resp. to Plt.'s Opp. to Def.'s Mot. to Dismiss at 6 (AF Instr. 65–106).) [2]

Finally, the plaintiff contends that Congress intended that employees of officers' clubs receive protection under the FLSA. This argument goes to the merits of the plaintiff's action; therefore, this Court does not have subject matter jurisdiction over the plaintiff's claim and will not consider it. While the plaintiff may well have a valid claim under the FLSA for overtime pay, this Court simply is not the proper forum in which to adjudicate the plaintiff's claim.

For the foregoing reasons, this Court finds that it does not have subject matter jurisdiction over the plaintiffs Complaint, and the Complaint is to be dismissed pursuant to RCFC 12(b)(1). It is the plaintiff's responsibility to bring its action in the proper court.

**B. Lack of an Express or Implied Contract.**

■ Even if the Bolling Officers' Club was an exchange service NAFI, specifically listed in section 1491(a)(1), this Court does not have subject matter jurisdiction over the plaintiff's Complaint for another reason; namely, the plaintiffs Complaint fails to allege an authorized express or implied contract as required by section 1491(a)(1).

■ This Court's Tucker Act jurisdiction over claims against the NAFIs listed in section 1491(a)(1) is limited to those claims that allege the existence of an express or implied contract. Moreover, the general rule is that:

> It is well established that federal employees do not have contractual relationships with the government, barring an explicit

---

**2.** Inapposite to the present action are those cases in which the NAFI at issue is not legally precluded from receiving appropriated funds but the authorizing legislation or regulation does not specifically state whether appropriated funds are available. *See McDonald's Corp. v. United States*, 926 F.2d 1126, 1132 (Fed.Cir.1991); *United States v. General Elec. Corp.*, 727 F.2d 1567, 1570 (Fed.Cir.1984); *L'Enfant Plaza Props., Inc. v. United States*, 229 Ct.Cl. 278, 280, 668 F.2d 1211

(1982): *Aaron*, 27 Fed. Cl. at 299; *Ford, Powell & Carson, Inc.*, 4 Cl.Ct. at 203–04; *South La. Grain Servs. v. United States*, 1 Cl.Ct. 281, 287 (1982). In these cases, this Court does have jurisdiction over claims against those NAFIs because there is no affirmative preclusion on using appropriated funds. To the contrary, in this case, there is a specific preclusion in the regulations against using appropriated funds for the payment of salaries and backpay.

agreement to the contrary executed by a federal officer who has authority to contract. * * * Thus, plaintiff here must overcome the presumption, as well as the evidence submitted by the defendant, that she held her position with the AAFES by appointment. * * * This presumption is in accordance with the principle which requires plaintiff to bear the burden of establishing subject matter jurisdiction by a preponderance of the evidence.

*Darden v. United States,* 18 Cl.Ct. 855, 859 (1989) (footnote omitted).

Based on these facts and circumstances, this Court finds that the plaintiff has not proven that he was employed by the Bolling Officers' Club under either an express or implied employment contract. First, nowhere in the plaintiff's Complaint does he allege that the defendant breached an express or implied contract to pay compensation for the plaintiff's overtime. To the contrary, the plaintiff alleges that he was denied overtime pay in violation of the FLSA. *See Army and Air Force Exch. Serv. v. Sheehan,* 456 U.S. 728, 736–37, 102 S.Ct. 2118, 2123–24, 72 L.Ed.2d 520 (1982); *Adanes v. United States,* 221 Ct.Cl. 959, 960 (1979); *Moore v. United States,* 21 Cl.Ct. 537, 540–41 (1990). In addition, in September 1989, when the Bolling Officers' Club hired the plaintiff, the NAFI Notification of Personnel Action stated that the plaintiff was hired by "APPOINTMENT." (AF Form 2545, dated Sept. 12 1989, attached to Def.'s Mot. to Dismiss.) Moreover, the promotions that the plaintiff received during his employment at the Bolling Officers' Club did not change his original status as an appointed employee. There is no proof or basis for this Court to conclude that the plaintiff's original status as an appointed employee ever changed while employed at the Bolling Officers' Club from September 1989 until December 1995. *See Darden,* 18 Cl.Ct. at 859. Thus, the plaintiff was employed by the Bolling Officers' Club pursuant to appointment, not an express or implied contract.

The plaintiff desires this Court to find jurisdiction based on FLSA violations. However, this argument ignores the fact that, insofar as the activities of the NAFIs are concerned, this Court only has jurisdiction for NAFI-related claims based on express or implied contracts. Therefore, while this Court's jurisdiction is based on "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department," it does not apply to all suits against NAFIs. 28 U.S.C. § 1491(a)(1); *see Adanes,* 221 Ct.Cl. at 960. The plaintiff has failed to identify any statute or regulation that gives this Court jurisdiction over the NAFI in this case, *i.e.,* the Bolling Officers' Club. Because no contract, statute, regulation, or constitutional provision exists to establish jurisdiction for his claim, the plaintiff's Complaint must be dismissed. *See Darden,* 18 Cl.Ct. at 859.

## CONCLUSION

For the foregoing reasons, this Court grants the defendant's Motion to Dismiss pursuant to RCFC 12(b)(1), and the plaintiff's Complaint is to be dismissed. The clerk of the Court is hereby directed to enter judgment accordingly.

Each party shall bear its own costs.